**Albert RIVA, Nancy Pentland and Robert G. Keenan, Individually and on behalf of all persons similarly situated, Plaintiffs,**

v.

**The COMMONWEALTH OF MASSACHUSETTS, the Public Employee Retirement Administration, the Boston Retirement Board and the Andover Retirement Board, Defendants.**

Civ. A. No. 94–10277–EFH.

United States District Court, D. Massachusetts.

Dec. 29, 1994.

Harold L. Lichten, Bryan C. Decker, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, MA, for Albert Riva, Nancy Pentland.

Christina Duddy, Grady & Dwyer, Boston, MA, for Robert G. Keenan.

Bryan C. Decker, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, Boston, MA, for Lawrence Rochon.

Thomas O. Bean, Atty. General's Office, Boston, MA, for Com. of Mass., Public Employee Retirement Admin.

Carol E. Nesson, Boston Retirement Bd., Boston, MA, for City of Boston.

Douglas I. Louison, Merrick and Louison, Devra G. Bailin, Hovey, Urbelis, Fieldsteel & Bailin, Boston, MA, for Town of Andover.

Devra G. Bailin, Hovey, Urbelis, Fieldsteel & Bailin, Carol E. Nesson, Boston Retirement Bd., Boston, MA, for the Boston Retirement Bd.

Douglas I. Louison, Merrick and Louison, Boston, MA, for the Andover Retirement Bd.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This matter is before the Court on cross-motions for summary judgment. Plaintiffs Albert Riva, Nancy Pentland and Robert Keenan claim that a Massachusetts statute, Mass.Gen.L. ch. 32, § 7(2)(b½), unlawfully re-

duces their disability payments in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Both the plaintiffs and defendants (The Commonwealth of Massachusetts, The Public Employee Retirement Administration, The Boston Retirement Board, and The Andover Retirement Board) have submitted a Joint Statement of Facts and have agreed that no material facts are in dispute. As such, summary judgment is appropriate.

## I. *Material Facts*

The plaintiffs are retired public workers in Massachusetts who retired as a result of job-related injuries.

Plaintiff Albert Riva was employed by the City of Boston from August, 1982 until April, 1992. In 1990, Riva suffered an injury on the job which led to his permanent disability. Riva retired on accidental disability pursuant to Mass.Gen.L. ch. 32, § 7 in April, 1992, after he had reached the age of fifty-five but before he had accrued ten years of creditable service in the state public employee retirement scheme. By letter dated August 19, 1992, the Boston Retirement Board sent Mr. Riva and his counsel a letter with an attachment advising him of the applicability of Mass.Gen.L. ch. 32, § 7(2)(b½) to his benefit payments. The Boston Retirement Board implemented Mass.Gen.L. ch. 32, § 7(2)(b½), thereby reducing the amount of Riva's monthly accidental disability retirement allowance from approximately $2,130 per month to approximately $775 per month, effective as of August 31, 1993, the last day of the month in which Riva attained the age of sixty-five. On September 30, 1993, Riva filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff Nancy Pentland was employed by the Town of Andover from February, 1981 until she retired on November 30, 1988. Pentland retired on accidental disability pursuant to Mass.Gen.L. ch. 32, § 7 after she had reached the age of fifty-five but before she had accrued ten years of creditable ser-

vice in the state public employee retirement scheme. In November, 1988, the Andover Retirement Board began to pay Pentland a monthly accidental retirement allowance in accordance with Mass.Gen.L. ch. 32, § 7. By letter dated December 3, 1991, the Town of Andover Contributory Retirement Board advised Pentland that it would implement the provisions of Mass.Gen.L. ch. 32, § 7(2)(b)½) and reduce the amount of her monthly retirement allowance on the last day of the month in which she attained the age of sixty-five. The Town of Andover Contributory Retirement Board implemented § 7(2)(b½), thereby reducing the amount of Pentland's monthly accidental disability retirement allowance from approximately $1,980 per month to approximately $830 per month, effective as of October 31, 1993, the last day of the month in which Pentland attained age sixty-five. On October 5, 1993 and November 2, 1993, Pentland filed a charge of discrimination with the EEOC.

Plaintiff Robert Keenan was employed by the City of Boston from December 18, 1989 until March 1, 1991. Mr. Keenan retired on accidental disability pursuant to Mass.Gen.L. ch. 32, § 7 after he had reached·the age of fifty-five but before he had accrued ten years of creditable service in the state public employee retirement scheme. Effective February 20, 1993, the Boston Retirement Board began to pay Keenan a monthly accidental disability allowance in accordance with Mass. Gen.L. ch. 32, § 7. By letter dated June 22, 1994, the Boston Retirement Board advised Keenan and his counsel of the applicability of Mass.Gen.L. ch. 32, § 7(2)(b½) to his benefit payments at the time when Mr. Keenan turns sixty-five. Keenan's date of birth is August 10, 1937. Keenan filed a charge of discrimination with the EEOC on August 25, 1994.

This action was commenced by Plaintiffs Riva and Pentland by filing a complaint with the United States District Court on February 10, 1994. Plaintiff Keenan entered the case by way of an unopposed motion filed with the Court on August 10, 1994.[1]

---

1. The Plaintiffs' Complaint originally contained three counts. Count I, alleging violations of the ADEA, 29 U.S.C. § 621 et seq., is the subject of

the instant motions. Counts II and III, alleging age discrimination in violation of two Massachusetts statutes, Mass.Gen.L. ch. 151B, and Mass.

## II. Relevant Statutory Provisions

Chapter 32 of the Massachusetts General Laws provides the statutory scheme for retirement systems and pensions of public employees in the Commonwealth. Section 7 of Chapter 32, entitled "Accidental disability retirement," sets forth the scheme applicable to public employees who are injured on the job and choose to retire on accidental disability.

In general, employees who retire on accidental disability, such as plaintiffs, receive a yearly pension equal to 72 percent of their annual rate of regular compensation as of the date the injury was sustained, or 72 percent of the average annual rate of their regular compensation for the twelve-month period for which they last received regular compensation immediately preceding the effective date of their retirement allowance, whichever is greater. Mass.Gen.L. ch. 32, § 7(2)(a)(ii).

In 1987, the Massachusetts legislature added Mass.Gen.L. ch. 32, § 7(2)(b½).[2] That section provides, in general, that a person who had accrued less than ten years of creditable service at the time of his accidental disability retirement, and who was at least fifty-five years old at the time of such retirement, would have the amount of his disability pension adjusted on the last day of the month he turned sixty-five to an amount equal to the amount he would receive if he were retired for superannuation.[3] As a result, when Section 7(2)(b½) applies, an employee's disability benefits are reduced when he turns sixty-five.

The ADEA was enacted in 1967 by Congress to address the problem of discrimination based on age in the workplace. The law prohibited discrimination in the "terms, conditions and privileges" of employment on the basis of age. 29 U.S.C. § 623(a). Under Section 4(f) of the Act, 29 U.S.C. § 623(f)(2),

however, age-based employment decisions taken pursuant to "the terms of ... any bona fide employee benefit plan such as retirement, pension, or insurance plan, which is not subterfuge to evade the purposes of this Act ..." are exempt from the provisions of the ADEA. In 1989, the Supreme Court in *Public Employees Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 177–182, 109 S.Ct. 2854, 2866–69, 106 L.Ed.2d 134 (1989), held that the ADEA exempts all provisions of a bona fide employee benefit plan from the purview of the ADEA, unless the employee demonstrates that a benefit plan provision is subterfuge for discrimination in the non-fringe-benefit aspects of the employment relationship.

In response to *Betts*, Congress enacted the Older Workers Benefit Protection Act ("OWBPA") on October 16, 1990, P.L. 101–433. The OWBPA overturned *Betts* by amending the ADEA so as to prohibit discrimination against older workers in all employee benefits except when justified by cost considerations. *See* 29 U.S.C. § 623.

The OWBPA did not, however, apply to the States, their political subdivisions, instrumentalities or agencies until October 16, 1992. In addition, Section 105(e) of the OWBPA provides that the changes to the ADEA wrought by the OWBPA do not apply to certain series of existing benefit payments:

CONTINUED BENEFIT PAYMENTS— Notwithstanding any other provision of this section, on and after the effective date of this title and the amendments made by this title, ... this title and the amendments made by this title shall not apply to a series of benefit payments made to an individual or the individual's representative that began prior to the effective date and that continue after the effective date pur-

---

Gen.L. ch. 93, § 103, respectively, were dismissed by the Court on plaintiffs' motion.

**2.** Mass.Gen.L. § 7(2)(b½) provides, in pertinent part:

The normal yearly amount of the allowance of any member retired under the provisions of this section ... who at the time of such retirement had attained the age of fifty-five and who at the time of such retirement had accrued fewer than ten years of creditable service shall be adjusted on the last day of the month in

which he attains the age of sixty-five to that to which he would be entitled under the provisions of section five as prescribed for a member of his group, if he were to be retired for superannuation upon the attainment of age sixty-five ...

**3.** The term "superannuation" refers to retirement based on age and years of service. *See* Mass.Gen.L. ch. 32 § 5.

suant to an arrangement that was in effect on the effective date

. . . . .

§ 105(e) of OWBPA, Pub.L. 101–433, as amended Pub.L. 102–236, § 9, Dec. 12, 1991, 105 Stat. 1816.

In the instant action, defendants do not contest that Mass.Gen.L. § 7(2)(b½) is facially discriminatory and is thus contrary to the ADEA, as amended by the OWBPA. Defendants do assert, however, as a procedural matter, that the claims of Plaintiffs Riva and Pentland are untimely, and that Plaintiff Keenan's claim is not ripe for adjudication. Moreover, defendants contend, on the merits, that the OWBPA amendments to the ADEA do not apply to the claims of Riva and Pentland as a result of the operation of Section 105(e) of the OWBPA.[4]

The specific issue on the merits is, therefore, whether the ADEA, as amended by the OWBPA, applies to the benefit payments of plaintiffs in view of the provisions of Section 105(e) of the OWBPA.

### III. *Timeliness*

■ A statutory prerequisite to a civil action alleging age discrimination in employment is the filing of a timely complaint with the EEOC. *Mercado–Garcia v. Ponce Federal Bank,* 979 F.2d 890, 895 (1st Cir.1992) (*citing* 29 U.S.C. § 626(d)). A complaint must be filed with the EEOC within 300 days of the allegedly discriminatory act in states which have enacted employment discrimination laws. *Id., citing* 29 U.S.C. §§ 626(d)(2) and 633(b). Massachusetts has enacted a law restricting discrimination in employment on the basis of age by public employers. Mass.Gen.L. ch. 151B, § 4(1C). Therefore, plaintiffs were required to file a complaint with the EEOC within 300 days of the allegedly discriminatory act.

Defendants argue that the charges filed with the EEOC by Plaintiffs Riva and Pentland were untimely because the filings were not accomplished within 300 days of plaintiffs receiving notice of the applicability of Section

7(2)(b½) to their benefit payments or, alternatively, that charges were not filed within 300 days after the effective date of the OWBPA. Defendants cite several cases to support the proposition, enunciated in the Supreme Court decision *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980), that a claim for discrimination arises when the plaintiff "learns of the alleged discriminatory act, not the point at which the consequences of the act become painful." *See Ching v. Mitre Corp.,* 921 F.2d 11, 14 (1st Cir.1990); *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6, *reh'g denied,* 454 U.S. 1166, 102 S.Ct. 1042, 71 L.Ed.2d 322 (1982).

Reliance on the rule of law pronounced in the cases cited by defendants is misplaced; while those cases focus on specific acts or events which trigger the running of the statute of limitations, the instant case involves a policy, or more specifically a state statute, which is itself allegedly discriminatory on its face.

In *Lorance v. AT & T Technologies,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), a Title VII case, the Supreme Court addressed the issue of timeliness with respect to a claim of discrimination based on the application of a facially nondiscriminatory seniority system. The plaintiffs in that case, women employees at AT & T, alleged that a seniority system resulting from a collective-bargaining agreement between AT & T and the plaintiffs' union discriminated against women employees when applied to them. The Supreme Court, reasoning that "the claimed invalidity of the facially nondiscriminatory and neutrally applied [ ] seniority system is wholly dependent on the alleged illegality of signing the underlying agreement, [and thus] it is the date of the signing which governs the limitations period," held that the limitations period begins to run on seniority systems which are nondiscriminatory in form and application at the time of the allegedly discriminatory adoption of the system. *Id.* at 911, 109 S.Ct. at 2268.

---

4. Defendants, in their briefs and at oral argument, did not address or contest liability on the merits with respect to the claim of Plaintiff Keen-an. Instead, defendants rely solely on the jurisdictional ripeness defense with respect to Keenan's claim under the ADEA.

Significantly, the *Lorance* Court distinguished between a facially nondiscriminatory system and a system discriminatory on its face. "There is no doubt, of course, that a *facially discriminatory* seniority system (one that treats similarly situated employees differently) can be challenged at any time." *Id.* at 912, 109 S.Ct. at 2269 (emphasis supplied). In a footnote, the Supreme Court elaborated on the point, stating that a facially discriminatory system "by definition discriminates each time it is applied." *Id.* 490 U.S. at 912 n. 5, 109 S.Ct. at 2269 n. 5.

The U.S. District Court for Massachusetts has applied the decision in *Lorance* to find timely a challenge under the ADEA to another provision of Mass.Gen.L. ch. 32 in *EEOC v. Commonwealth of Massachusetts,* 54 FEP Cases 436, 1990 WL 173728 (1990). In that case Judge Zobel found that Mass.Gen.L. ch. 32, § 90F, which explicitly terminated accrual of pension benefits at age seventy, and mandated that all those who retire later than age seventy receive only those benefits to which they were entitled at age seventy, was facially discriminatory. *Id.* at 438, 1990 WL 173728 at *1. Citing *Lorance,* the Court ruled that the operation of Section 90F discriminated each time it was applied, and therefore could be "challenged at any time." *Id., citing Lorance,* 490 U.S. at 912, 109 S.Ct. at 2269. Moreover, the Court dismissed the fact that *Lorance* was decided on other grounds: "Attempts to distinguish *Lorance* on the grounds that it was a Title VII case or that it concerned a seniority system rather than a pension plan are to no avail." *Id.* 1990 WL 173728 at *5 n. 7

The Court finds *Lorance* controlling, and Judge Zobel's opinion in *EEOC* persuasive, on the issue of timeliness in the instant action. Mass.Gen.L. ch. 32, § 7(2)(b½) mandates a change in benefits at age sixty-five for employees with less than ten years of creditable service who were *over* age fifty-five when they received an accidental disability retirement. In contrast, employees with less than ten years of service who receive an accidental disability retirement when they are *less than* fifty-five years old will not be subject to Section 7(2)(b½) and thus will not have their benefits reduced at age sixty-five. Age is therefore a "but for" factor in determining whose benefits will be reduced. Thus, Section 7(2)(b½) is facially discriminatory towards certain state employees *over* the age of fifty-five.[5]

■ The Court therefore rules, for purposes of determining whether Plaintiffs Riva and Pentland timely filed their claims with the EEOC, that Mass.Gen.L. ch. 32, § 7(2)(b ½) is facially discriminatory under the ADEA, as amended by the OWBPA. As a facially discriminatory statute, it discriminates each time it is applied, and therefore can be attacked at any time. Plaintiff Riva, who filed a charge of discrimination with the EEOC on September 30, 1993, filed well within 300 days of August 31, 1993, the date of the first application of Section 7(2)(b½) to his benefit payments. Likewise, Plaintiff Pentland, who filed a charge of discrimination with the EEOC on October 5, 1993, and November 2, 1993, filed well within 300 days of October 31, 1993, the date of the first application of Section 7(2)(b½) to her benefit payments. Plaintiffs Riva and Pentland therefore have timely filed their complaints with the EEOC.

IV. *Ripeness*

■ The doctrine of ripeness grows out of the requirement of Article III of the U.S. Constitution that federal courts decide suits which present them with a "case or controversy." Courts use a two-part test in determining ripeness. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). First, courts consider whether an issue is "purely legal, as opposed to factual, and the degree to which any challenged [government] action is final." *W.R. Grace & Co.–Conn. v. U.S.E.P.A.,* 959 F.2d 360, 364 (1st Cir.1992) (citations omitted). Second, the inquiry focuses upon the question of "hardship," "a question which typically turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties." *El*

---

**5.** Defendants do not contest that Section 7(2)(b½) is facially discriminatory under the ADEA as amended by the OWBPA.

*Dia, Inc. v. Hernandez Colon,* 963 F.2d 488 (1st Cir.1992) (citations omitted). "[P]erhaps the most important consideration in determining whether a claim is ripe for adjudication is the extent to which 'the claim involves uncertain and contingent events that may not occur as anticipated, or indeed may not occur at all.'" *Lincoln House, Inc. v. Dupre,* 903 F.2d 845, 847 (1st Cir.1990) (quoting 13A Wright & Miller & Cooper, Federal Practice and Procedure § 3532.2, at 141 (1984)).

Examination of Mr. Keenan's claim under the foregoing rules clearly establishes that his claim is not ripe for adjudication. Mass.Gen.L. ch. 32, § 7(2)(b½) will not be effective as to Mr. Keenan until the last day of August, 2002. Over the course of the next eight years, the legal issues in this case may be resolved by a change of circumstances. Mr. Keenan may no longer be permanently disabled, or may be deceased. Eight years is a substantial amount of time during which the positions of the parties, or the state of the law, may change. In addition, Mr. Keenan faces no "direct and immediate" harm. While plaintiffs argue that Mr. Keenan is unable to adequately prepare his financial future, such "difficulty" is not cognizable as a direct or immediate hardship. While the Court is sympathetic to Mr. Keenan's plight, the alleged harm is far too uncertain and contingent, and "may not occur as anticipated, or indeed may not occur at all." *Lincoln House, Inc.,* 903 F.2d at 847; *see also Ashwander v. T.V.A.,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936), *reh'g denied,* 297 U.S. 728, 56 S.Ct. 588, 80 L.Ed. 1011 (1936) (In an opinion by Justice Brandeis, the Supreme Court stated "the Court will not pass upon the validity of a statute upon complaint of one who fails to show that he is injured by its operation.").

Buttressing the ruling that Mr. Keenan's claim is not ripe for adjudication is an acknowledgement of the need for cautious exercise of judicial power by federal courts when presented with issues striking at the heart of our federal system. This Court is hesitant to find ripe a claim by a plaintiff such as Mr. Keenan, whose claim may never materialize and who faces uncertain future harm, where the merits of the case involve the potential for invalidating a state statute on grounds that it conflicts with a federal statute.

V. *The Applicability of the OWBPA Amendments to the Claim of Age Discrimination by Plaintiffs Riva and Pentland*

Defendants do not contest plaintiffs' assertion that Mass.Gen.L. ch. 32, § 7(2)(b½) is in violation of the ADEA as amended by the OWBPA. Instead, defendants argue that Section 105(e) of the OWBPA operates to exempt the application of the OWBPA amendments to benefit payments made to Plaintiffs Riva and Pentland pursuant to Section 7(2)(b½). Thus, the crucial issue is whether Section 105(e) applies to the benefit payments made to Riva and Pentland pursuant to Mass.Gen.L. ch. 32, § 7(2)(b½).

As noted previously, Section 105(e) of the OWBPA exempts certain "Continued benefit payments" from the ambit of the substantive amending provisions of the OWBPA. The crucial portion of Section 105(e) which must be interpreted by the Court is as follows:

... this title and the amendments made by this title shall not apply to a series of benefit payments made to an individual ... that began prior to the effective date and that continue after the effective date pursuant to an arrangement that was in effect on the effective date ...

Before inquiring into the meaning of Section 105(e), some basic rules of statutory construction merit discussion. First, "[w]hen interpreting a statute, [courts] look first and foremost to its text." *U.S. v. Alvarez–Sanchez,* —— U.S. ——, ——, 114 S.Ct. 1599, 1603, 128 L.Ed.2d 319 (1994). More precisely, "the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary cases, is finished." *Estate of Cowart v. Nicklos Drilling Co.,* —— U.S. ——, ——, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992).

To the best of this Court's knowledge, this case presents the first opportunity for a federal court to interpret the meaning of Section

105(e) of the OWBPA. Fortunately, the text of Section 105(e) is unambiguous. The language of Section 105(e) provides that the substantive amendments to the ADEA wrought by the OWBPA do not apply to a "series" of benefit payments that began prior to October 16, 1992 (the effective date of the OWBPA amendments) and which continued after October 16, 1992, pursuant to an arrangement in effect on October 16, 1992.

Crucial to our interpretation of Section 105(e) is a determination of the meaning of the word "series." Where the language of a statute includes words not defined in the statute, those terms must be construed "in accordance with [their] ordinary or natural meaning." *Alvarez–Sanchez,* — U.S. at —, 114 S.Ct. at 1603. "Series," a word not defined in the OWBPA, means "a number of things or events of the same class coming one after another in spatial or temporal succession." *Webster's Ninth New Collegiate Dictionary,* p. 1074 (1990). It is clear that, with respect to the timing of the payments, Plaintiffs Riva and Pentland received, and continue to receive, payments "one after another in a spatial or temporal succession." The issue then becomes whether the payments were of the same "class." A "class" means "a group, set or kind sharing common attributes." *Webster's Ninth New Collegiate Dictionary,* p. 245.

Plaintiffs argue that, because Section 7(2)(b½) operates to change plaintiffs' disability payments to an amount equal to what plaintiffs would have received upon superannuation retirement, plaintiffs began receiving a new "class" of payments, to wit, superannuation retirement benefits. Plaintiffs' argument cannot be reconciled with the clear language of the statute. Both Riva and Pentland were receiving "Accidental disability retirement" benefit payments pursuant to Mass.Gen.L. ch. 32, § 7, prior to, and continuing after, October 16, 1992. When Section 7(2)(b½) became applicable to Riva and

Pentland, their retirement status did not change; they remained retired on account of disability. Thus, they continued to receive payments of the same class, i.e., disability payments pursuant to Mass.Gen.L. ch. 32, § 7, although the *amount* of the payments was adjusted. Stated another way, despite the fact that their newly adjusted benefits were calculated using the superannuation formula, Plaintiffs Riva and Pentland did not begin receiving superannuation retirement benefits (Mass.Gen.L. ch. 32, § 5), which would have constituted payments of a different class, and thus a different series, but instead continued to receive Section 7 disability retirement benefits.[6]

Finally, Section 105(e) requires that the series of payments be made pursuant to a arrangement which was in effect on October 16, 1992. The "arrangement" in the instant case is the disability retirement section (Mass.Gen.L. ch. 32, § 7) of the Massachusetts statute governing retirement systems and pensions for public employees (Mass.Gen.L. ch. 32). In particular, Section 7(2)(b½) has been a part of that arrangement since its adoption in 1987. Thus, the series of payments to Riva and Pentland were clearly made pursuant to an arrangement in effect on October 16, 1992.

Federal laws which clash with state statutes should be interpreted by federal courts, when justified by statutory language, in such a manner as not to render the actions of the state legislature null and void. Principles of comity require such a judicial strategy toward statutory construction. Our system of federalism works well only when the parts of the federal and state governments interact without friction and crucial functions of state government, such as the administration of the state employee retirement system, are allowed to remain free to operate without unnecessary federal interference. States play an indispensable role in carrying out

6. Plaintiffs' focus on the legislative history surrounding the promulgation of Section 105(e) is inconclusive and, more importantly, unnecessary for the instant analysis. Because the Court rules that the language of Section 105(e) is unambiguous, there is no need to delve into the legislative history regarding the OWBPA amendments to

the ADEA. "Suffice it to say that legislative history need not confirm the details of changes in the law effected by statutory language before we will interpret that language according to its natural meaning." *Morales v. Trans World Airlines, Inc.,* — U.S. —, —, n. 2, 112 S.Ct. 2031, 2038, n. 2, 119 L.Ed.2d 157 (1992).

governmental responsibilities in the United States.

However, since the Commonwealth has conceded that Section 7(2)(b½) is facially discriminatory, it would be prudent for the state legislature to consider amending this statute, with a comprehensive approach, prior to a court, in an appropriate case, disrupting a fiscally integrated system by judicial fiat.

## VI. *Conclusion*

The Court rules that the claims of Plaintiffs Riva and Pentland were timely filed with the EEOC for purposes of the statute of limitations. The Court rules that Plaintiff Keenan's claim is not ripe for adjudication and therefore his claim under Count I is dismissed without prejudice. Finally, the Court rules that the OWBPA amendments to the ADEA do not apply to the benefit payments received by Riva and Pentland pursuant to Mass.Gen.L. ch. 32, § 7(2)(b½), in view of the provisions of Section 105(e) of the OWBPA. Therefore, summary judgment is granted for the defendants on Count I.

SO ORDERED.