OPINION OF THE COURT
John R. LaCava, J.
In this CPLR article 78 proceeding, petitioner John P. Far *335 rell, a former City of White Plains firefighter, challenges the termination of General Municipal Law § 207-a (2) benefits on the grounds that the determination is arbitrary, capricious, an abuse of discretion, is affected by errors of law, and was made in violation of lawful procedure.
Among other things, petitioner argues that it was error for respondents to have terminated his section 207-a (2) benefits because there is no mandatory service retirement age applicable to him, nor is there any age specified by applicable law for termination of his wages, within the meaning of General Municipal Law § 207-a (2). Farrell asserts that the Age Discrimination in Employment Act (29 USC § 621 et seq.) preempts the 62 year age retirement option that he had selected. He also argues that respondents denied him due process because the benefit was terminated without a hearing.
FACTS
While employed as a firefighter with respondent City of White Plains, Farrell voluntarily opted out of the Retirement and Social Security Law § 375-i base retirement plan, which provides for a mandatory retirement age of 70, in favor of Retirement and Social Security Law § 384-d retirement benefits, which calls for mandatory retirement at age 62 in exchange for additional benefits.
Farrell left active duty in August 1973 as a result of a line-of-duty injury which prevented him from performing required services. In compliance with General Municipal Law § 207-a (1), respondent City of White Plains paid Farrell his full salary and wages, and all injury related medical and hospital expenses, although he was unable to return to work.
In February 1978, respondent John M. Dolce, as Commissioner of Public Safety of the City of White Plains, filed an application pursuant to General Municipal Law § 207-a (2) and Retirement and Social Security Law § 363, on Farrell’s behalf, for accidental disability retirement benefits with the New York State Policemen’s and Firemen’s Retirement System. The application was granted on September 20, 1978. Farrell’s retirement was effective October 27, 1978. As required by General Municipal Law § 207-a (2), the City commenced paying Farrell a payment benefit equal to the difference between his Retirement and Social Security Law § 363 accidental disability pension (75% of his final average salary) and the full salary and wages including, among other things, raises that he would have received had disability retirement not been granted, as *336 well as all medical and hospital expenses related to the disabling injury.
By letter dated May 8, 1995, Commissioner Dolce notified Farrell that effective May 12, 1995, Farrell’s 62nd birthday, the City was going to discontinue paying supplemental payments pursuant to General Municipal Law § 207-a (2). As required, however, it would continue to pay for all medical and hospital expenses relating to the disabling injury.
CONCLUSIONS OF LAW
Section 207-a of the General Municipal Law provides, in pertinent part:
"1. Any paid fireman * * * who is injured in the performance of his duties * * * shall be paid by the municipality
* * * by which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased, and, in addition, such municipality * * * shall be liable for all medical treatment and hospital care furnished during such disability * * *
"2. Payment of the full amount of regular salary or wages, as provided by subdivision one of this section, shall be discontinued with respect to any fireman who is permanently disabled as a result of an injury * * * resulting from the performance of his duties if such fireman is granted an accidental disability retirement allowance pursuant to section three hundred sixty-three of the retirement and social security law
* * * provided, however, that in any such case such fireman shall continue to receive from the municipality * * * until such time as he shall have attained the mandatory service retirement age applicable to him * * * the difference between the amounts received under such allowance or pension and the amount of his regular salary or wages”.
"As one court has noted, '[sjection 207-a of the General Municipal Law is a remedial statute enacted for the benefit of firemen and should be liberally construed in their favor’ ” (Matter of Mashnouk v Miles, 55 NY2d 80, 88, quoting Pease v Colucci, 59 AD2d 233, 235). Nonetheless, in upholding the passage of chapter 965 of the Laws of 1977,[1] which diminished section 207-a disability benefits, the Court of Appeals recognized in Cook v City of Binghamton (48 NY2d 323, 332): "[S]ection *337 207-a of the General Municipal Law was enacted as a matter of public policy, in the exercise of the police power, to protect firemen. The benefits it afforded were part of the terms and conditions of employment which the Legislature properly could change at will without interdiction by section 7 of article V [of the New York State Constitution].”
The Age Discrimination in Employment Act (the ADEA) provides, in pertinent part (29 USC § 623):
"It shall be unlawful for an employer—
"(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s age”.
The ADEA was enacted by Congress "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment” (29 USC § 621 [b]). "To this end, the Act today prohibits virtually all employers from discriminating on the basis of age against employees or applicants for employment * * * by, for example, discharging them or requiring them to retire involuntarily” (Johnson v Mayor & City Council of Baltimore, 472 US 353, 355 [1985] [citations omitted]).
Had Farrell not already been retired, the ADEA would have prohibited his mandatory retirement at age 70, and perhaps at age 62.[2] However, the ADEA has no such application since Farrell’s "involuntary” retirement due to work related injuries already terminated his membership in the retirement system (see, Matter of Caprari v Regan, 148 AD2d 803 [3d Dept 1989]).
General Municipal Law § 207-a (2) benefits are not, as petitioner urges, wages or salary, reduced by an amount equal to Retirement and Social Security Law § 363 pension benefits. Section 207-a (2) explicitly states that the obligation to pay "salary or wages * * * shall be discontinued” provided that the municipality pays the supplement, which is calculated by taking into account one’s salary and wages, among other *338 things. Therefore, I must reject petitioner’s argument that section 207-a (2) allows age based, wage discrimination in violation of the ADEA.
Section 207-a (2) benefits are employee benefits which fall within the "continued benefit payments” exception found in section 105 (e) of the Older Workers Benefit Protection Act (OWBPA) (Pub L 101-433, 104 US Stat 978).
Passed on October 16, 1990 in response to the 1989 Supreme Court decision of Ohio Pub. Empl. Retirement Sys. v Betts (492 US 158 [all provisions of bona fide employee benefit plans are exempt from the ADEA, unless employee can show that particular benefit plan is subterfuge for discrimination vis-a-vis the non-fringe-benefit aspects of the employment relationship]), the OWBPA amended the ADEA to prohibit age based discrimination with respect to all employee benefits except to the extent that such discrimination could be cost justified.[3] There are exceptions, however.
Section 105 (e) of the OWBPA provides: "on and after the effective date of this title and the amendments made by this title [Oct. 16, 1992] * * * this title and the amendments made by this title shall not apply to a series of benefit payments made to an individual * * * that began prior to the effective date [Oct. 16, 1992] and that continue after the effective date pursuant to an arrangement that was in effect on the effective date [Oct. 16, 1992]” (Pub L 101-433, 104 US Stat 978).
Farrell began receiving the stream of General Municipal Law § 207-a (2) benefit payments approximately 14 years before the effective date of the amendments to the ADEA (Oct. 16, 1992). The payments continued for more than 2[1]/2 years thereafter. Therefore, Farrell’s section 207-a (2) benefits fall within the exception to the OWBPA’s amendment to the ADEA (see, Riva v Commonwealth of Massachusetts, 871 F Supp 1511 [Mass 1994] [exemption from ADEA applicable to a statutory plan requiring disability benefits to be reduced for certain employees at age 65], affd 61 F3d 1003 [1st Cir 1995]).
In Riva v Commonwealth (supra), the court stressed the need for Federal courts to interpret potential conflicts between State and Federal law "in such a manner as not to render the actions of the state legislature null and void” (871 F Supp, at 1519). This court must move with similar restraint. In so doing, I note that after the passage of the ADEA, the New York *339 State Legislature saw fit to delete the under 60 year old requirement for accidental disability retirement eligibility (see, Retirement and Social Security Law § 363). However, no such amendment was made to the "mandatory retirement age” reference in General Municipal Law § 207-a (2).
The ADEA does not otherwise change the meaning and calculability of the term "mandatory service retirement age applicable to him” for the limited purpose for which such reference is made in General Municipal Law § 207-a (2), i.e., to determine longevity of an employer’s section 207-a (2) obligation as permitted by OWBPA § 105 (e), and not to compel retirement based upon age, to diminish pension benefits, or to permit age based wage discrimination. This is so even if Retirement and Social Security Law § 384-d is deemed facially violative of the ADEA (a determination that need not be and is not here reached).
One’s entitlement to General Municipal Law § 207-a (2) benefits is essentially determined by the Comptroller’s grant of accidental or performance of duty disability retirement benefits under Retirement and Social Security Law §§ 363 and 363-c (see, Matter of Metz v Department of Fire, 201 AD2d 760 [3d Dept 1994]; Matter of Pidel v City of Yonkers, 208 AD2d 845 [2d Dept 1994], lv denied 85 NY2d 812). That, nonetheless, is not controlling on how long section 207-a (2) benefits are calculated to run. Likewise, the "involuntary” nature of the subject disability retirement is of no consequence (see, Matter of Caprari v Regan, 148 AD2d 803 [3d Dept 1989], supra, appeal dismissed 74 NY2d 840). This is especially so where, as here, there is no indication that the involuntary retiree was precluded from changing his retirement option prior to having been retired, or that an otherwise timely objection was made after having been retired.
Based upon the foregoing, I do not find that respondents’ determination to terminate Farrell’s General Municipal Law § 207-a (2) benefits was arbitrary, capricious or an abuse of discretion. It was done in accordance with the law.
Since respondents’ determination was based solely upon an interpretation and application of law, I also do not find that Farrell was denied due process of law by not having been accorded a pretermination hearing (see, Matter of Faliveno v City of Gloversville, 215 AD2d 71 [3d Dept 1995]).

. Age 70 retirement is truly "involuntary” separation from service. In contrast, age 62 separation only occurs upon one’s voluntary election to obtain certain additional pension benefits under section 384 of the Retirement and Social Security Law (see, Matter of Conomikes v City of Binghamton, 81 AD2d 992 [3d Dept 1981]; Bouffier v Frank, 389 F Supp 502, 504 [ED NY 1975]).

. The OWBPA became applicable to the States and their political subdivisions in October 1992.